Mrs. Mable C. GARY

v.

NORTHERN BARGE LINE
COMPANY et al.

Mrs. Doris Rosemond WOODS, etc.

v.

NORTHERN BARGE LINE
COMPANY et al.

Ruth Wall WILLIAMS, etc., et al.

v.

NORTHERN BARGE LINE
COMPANY et al.

Nos. 73–384 to 73–386.

United States District Court,
E. D. Louisiana.

March 28, 1977.

Jack C. Benjamin, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiffs in Nos. 73–384 and 73–385.

A. A. Gordon Grant, Jr., Montgomery, Barnett, Brown & Read, New Orleans, La., for plaintiff in No. 73–386.

Paul A. Nalty, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Frank A. Valls.

## MEMORANDUM OPINION AND ORDER

EDWARD J. BOYLE, Sr., District Judge:

The plaintiffs, survivors of Cleveland Woods, Harold J. Gary and Bobby O. Williams, proceed in this action under General Maritime Law against Frank A. Valls, a Certified Marine Chemist,[1] for his alleged negligence in the issuance of a gas-free certificate which plaintiffs claim contained an inaccurate description of the spaces of the Barge NBL–2 and, further, that Avondale's "competent person" relied on this description in his testing of the barge NBL–2 on which subsequently an explosion occurred killing Woods, Williams and Gary[2] on February 11, 1972.

Claims against all other defendants by the plaintiffs were voluntarily dismissed as a result of settlement and the claim of Northern Barge Line Company [NBL] against Avondale Shipyards, Inc. [Avondale] was dismissed by a joint motion of dismissal. Plaintiffs' claims against Valls were tried to the Court and at the close of plaintiffs' case, defendant moved for a Rule 41(b)[3] dismissal which we granted. We now record our findings of fact and conclusions of law.

NBL contracted with Avondale for the latter to make certain modifications to the NBL–2,[4] a typical inland tank barge 195.1

---

**1.** Defendant has been affiliated with O'Connor-Valls Laboratory from 1967 to the present and was certified as a Marine Chemist in 1968 by the National Fire Protection Association.

**2.** Gary and Williams were employed as welders and Woods as a pipefitter by Avondale and all work performed on the NBL–2 was by Avon-dale personnel utilizing Avondale's equipment and facilities.

**3.** Rule 41(b), F.R.Civ.Pro.

**4.** *See* Plaintiffs' Exh.No. 3 for details of the proposed modifications. Avondale was also

feet in length, 35.1 feet in breadth and 9.5 feet deep with bow and aft rake compartments and three main cargo compartments with each said compartment holding two cylindrical cargo tanks. The three main compartments were divided by steel bulkheads and within each were saddles which served as "cradles" for the cylindrical cargo tanks.

Two hatches for each of the three cargo compartments provided access into these spaces from the deck. Further access was available from one inner bottom space to another by means of two 18" elliptical holes cut through each of the saddles. This arrangement would allow the free transmission of air and other gases from one inner bottom space to another and, therefore, the presence of an explosive atmosphere in any one of the inner bottom spaces would be detectable from any one of the deck hatches which was on the same side of the barge as the inner bottom space to be tested. See Plaintiffs' Exh.Nos. 5(A)(1)–5(A)(3) for photographs.

After discharging cargo, the NBL–2 arrived at the Avondale yard on December 12, 1971 and on December 23, 1971 was moved to Avondale's gas-free facility where, on January 25, 1972 and January 26, 1972, numerous access holes were cut through the deck to expedite the butterworthing operation. It was also on this occasion that the saddle holes were cut, however, the aforesaid deck access holes (not the hatches) were closed prior to the explosion of February 11, 1972 (see Plaintiffs' Exh.Nos. 5 and 6) while the saddle holes were left open throughout the course of modification operations and were still open at the time of the explosion.

Defendant Valls' first inspection of the NBL–2 on January 25, 1972 was requested by Avondale to determine if the conditions onboard the barge were such as to allow the "hot work," i. e., cutting operations, to proceed. As a result of his inspection Valls

issued a gas-free certificate stating that the spaces described therein were safe for men and safe for fire. The distribution of copies of both this and the subsequent certificate issued by Valls was that eight of the copies remained with Avondale with three of these copies placed onboard the barge and the balance distributed to Avondale's gas-free facility personnel. The remaining four copies were retained by Valls. In the certificate Valls described the spaces of the barge as six main cargo tanks, forward rake, three inner bottoms and after rake. See Plaintiffs' Exh.No. 7.[5]

After the gas-free operations were completed on January 26, 1972, Valls was again called upon to inspect the NBL–2 prior to its movement from the gas-free facility. This inspection resulted in the issuance of a second gas-free certificate which found conditions aboard the vessel to be safe for men and safe for fire. The January 26, 1972 certificate forms the basis of plaintiffs' action against Valls in that he allegedly gave an inaccurate description of the spaces or compartments of the barge by referring to them as six main cargo tanks, three main cargo tanks and fore and after rakes instead of six main cargo tanks, three inner bottoms and fore and after rakes. See Plaintiffs' Exh.No. 7(A). Plaintiffs do not contend that an explosive atmosphere existed aboard the NBL–2 on January 26, 1972 but that the "competent person" designated by Avondale to conduct daily inspections of the barge while work was in progress relied upon the description contained in said certificate and, due to this reliance, failed to detect the explosive atmosphere which caused the February 11, 1972 accident.

Beyond recalling nothing unusual about the inspection of the NBL–2 on January 25, 1972 and January 26, 1972, Valls was unable to give any details of those two inspections. Specifically, he could not recall if he entered each inner bottom space of the barge during the course of his inspections. He did

making modifications to three other tank barges owned by NBL which had configurations similar to that of the NBL–2.

5. Plaintiffs' Exhs. 7, 7(A), 7(B) and 7(C) were admitted subject to defendant's objection. We find the exhibits to be relevant and therefore now overrule said objections.

testify that it would not be necessary to enter every space in order to perform an accurate test and that it is the chemist's prerogative to determine what procedures are required under existing circumstances to obtain a valid test result.

On January 26, 1972, after issuance of the certificate, the NBL–2 was moved to Avondale's Wet Dock # 2 where work commenced on January 28, 1972. Pursuant to provisions of 29 CFR 1915.1 *et seq.,* Avondale had appointed a "competent person"[6] to conduct daily tests and inspections of vessels and to complete a U.S. Department of Labor Log of Inspections and Tests by Competent Person form, more commonly referred to as a MAR–9 form[7] stating the results of said tests and inspections. MAR–9 forms were completed for the NBL–2 for each work day from January 28, 1972 through the morning of the explosion. On all of the MAR–9 forms completed during that time period the spaces inspected were described as "main cargo tanks, fwd. rake, aft rake and inner bottoms." See Defendant's Exh.Nos. 2A–2K and Plaintiffs' Exh.No. 8.

Marshall St. Amant, Avondale's competent person[8] who made the inspections of the NBL–2 from February 7, 1972 through the morning of February 11, 1972, testified that in determining what spaces were to be inspected he would refer to either a prior MAR–9 form or the Gas Chemist's Certificate. However, he could not recall which one he had used on the day of the explosion. His normal procedure was to go to the office in the morning to determine which vessels needed to be inspected, pull a previously completed MAR–9 or chemist certificate corresponding to those vessels and then conduct the inspections. The test conducted consisted of dropping a tube connected to an explosimeter into each opening of the barge and taking a reading from the meter. This was the procedure followed on the morning of the accident. All readings obtained from tests conducted aboard the NBL–2, including those on the day of the explosion, were zero. Further testimony by Mr. St. Amant revealed that he probably would have used a prior MAR–9 as all of the previously completed forms were in the file and he would, therefore, utilize the one for the most recently completed test on the NBL–2. Beyond a general description of his normal procedure and his testimony that all explosimeter readings were zero, the witness was unable to recall any specifics concerning his inspection of the NBL–2 on the morning of February 11, 1972. He could not recall if he entered the inner bottom spaces, the number or location of spaces tested, the subdivision of the various compartments or the existence of access holes in the deck other than the hatch openings.

After examining both the prior MAR–9 forms and the Gas Chemist's Certificate of January 26, 1972, the witness was still unable to identify which form he actually used on the morning of the accident. However, he did conclude that he probably relied on prior MAR–9s and further, that despite the

---

**6.** 29 CFR 1915.2(k)(1) states "[t]he term 'competent person' for purposes of this part means a person who is capable of recognizing and evaluating employee exposure to hazardous substances or to other unsafe conditions and is capable of specifying the necessary protection and precautions to be taken to ensure the safety of employees. . . ." Also, *see* 29 CFR 1915.10.

**7.** The format of the MAR–9 is such that the space inspected, the operations being performed, the date and time of inspection, the results of said inspection and comments on conditions aboard the vessel can be reported by the competent person making the inspection. The competent person is required to both initial and sign the report form and to keep the report

on file for at least three months after the date of the completion of the job. *See* 29 CFR 1915.10(c)(1).

**8.** Mr. St. Amant's title was that of Safety Compliance Officer whose duties included the inspection of vessels undergoing repairs or those under construction, the monitoring of general conditions throughout the yard and the investigation of accidents. To qualify as a competent person he obtained training from the Department of Labor. His training included instruction on the proper use of an explosimeter. Mr. St. Amant testified his employment with Avondale, he thought, in 1973 and at time of trial was employed as a truck driver.

description given on either form, he would check all spaces and, if he had any doubt as to the existence of other spaces, he would refer to specifications or other reference materials to determine their existence.[9]

The certificate issued by defendant Valls on January 26, 1972, some fifteen days prior to the explosion, contains an endorsement which states, in part, that the certificate is based on conditions existing at the time of inspection and further, that "[i]n the event of any . . . opening [of] valves, breaking [of] pipelines, shifting [of] vessels or ballast or any other activity altering conditions within the space, this certificate becomes void." See Plaintiffs' Exh.No. 7(A). It is not disputed that conditions were altered subsequent to Valls' last inspection[10] and further, plaintiffs concede the barge was gas-free on January 26, 1972 as Valls reported it was. But, the basis of plaintiffs' action is that Avondale's competent person detrimentally relied on the alleged inaccurate description of the barge spaces.

The spaces referred to in Valls' certificate as "three main cargo tanks," according to the uncontradicted testimony of Valls, are referred to variously as inner bottoms, hopper spaces, tank spaces, void spaces and by "any number of other names." We may reasonably infer that Avondale and its personnel familiar with tank barge construction and layout, and particularly that of the NBL–2, and having knowledge of the conversion plans of and the work with respect to the NBL–2 which had been done up to February 11, 1972, were cognizant of those interchangeable terms of reference. Description of the spaces in eleven MAR–9 certificates completed prior to the explosion by Avondale's competent persons, including one completed by St. Amant on the morning of February 11, 1972, as "inner bottoms" not only supports the inference, but clearly establishes Avondale's competent persons were not mislead by Valls' description of those same spaces as "three main cargo tanks," even if the latter description be inaccurate, as plaintiffs claim,[11] or clerically erroneous, as defendant claims.

As to the issue of Avondale's right to rely on the chemist certificate, 29 CFR 1915.1(c) provides that "[t]he responsibility for compliance with the regulations of this part is placed upon 'employers'. . . ." The purpose of 33 U.S.C. 941 and the regulations promulgated thereunder in 29 CFR 1915 *et seq.* is to compel employers to, among other things, maintain working conditions in such a manner as to protect the life, health and safety of employees.[12] Plaintiffs have offered no evidence nor have they referred us to, and we are not aware of, any authority in support of the claimed right of Avondale to rely on defendant's description of the barge. We conclude that the onus was upon Avondale to insure full compliance with the regulations and, in attempting to meet its duty, it elected to employ defendant to conduct the first two inspections with the remainder of the inspections being conducted by competent persons designated by it.

For a determination of the remaining issue of actual reliance we again refer

---

**9.** Defendant Valls also testified that a marine chemist, as well as a designated competent person, should always conduct a completely independent inspection without reliance on any prior inspection done by himself or another. Such approach would appear reasonable and prudent.

**10.** The vessel was moved from Avondale's gas-free facility to their Wet Dock # 2 whereupon conversion operations commenced. These conversions involved "hot work" necessary in refitting of sumps in the cargo tanks and the cutting and removal of old cargo pipe. *See* Plaintiffs' Exh.No. 9.

**11.** A corollary of plaintiffs' argument is that the saddles formed separate compartments which were not described at all on the certificate. This contention is without merit as the saddles are an integral part of the inner bottom spaces and, further, the free transmission of gases from one inner bottom space to another precludes consideration of the saddles as separate "spaces."

**12.** 29 CFR 1915.1(a).

to 29 CFR 1915 *et seq.*, more specifically to 29 CFR 1915.10, which creates the employer's duty to designate a competent person, unless the duties of the competent person are always performed by a marine chemist, and also delineates the qualifications which must be possessed by the person so designated. Of particular note is subdivision (b)(4) of section 1915.10 which provides that the competent person have a "[f]amiliarity with the structure and knowledge of the location and designation of the spaces of the types of vessels on which repair work is done." An erroneous description of some of the barge spaces in a gas-free certificate issued 15 days prior to the explosion and prior to the movement of the barge and the work done thereon by Avondale between January 26, 1972, when the barge was concededly gas-free, and the explosion on February 11, 1972, would not relieve Avondale of its obligation to designate a competent person who would possess the required familiarity with and knowledge of the vessel and its spaces, the capability to recognize any such erroneous description and the ability to ascertain the proper description.

Furthermore, the evidence fails to preponderate that Avondale's designated competent person, Marshall St. Amant, relied on Valls' January 26, 1972 certificate and the description of spaces therein.

Avondale had the complete detailed construction plans and specifications of the NBL–2 and the three other NBL barges undergoing similar modifications, as well as the specifications for the latter.[13] Eleven inspections by Avondale designated competent persons had been conducted prior to the explosion of February 11, 1972 and Marshall St. Amant, as well as other Avondale personnel had access to the MAR–9 forms which reported the results of those inspections. If the description of the spaces contained in either the MAR–9 forms on Valls' certificate were in any way inaccurate Avondale had both the time, opportunity and available information to discover such an error.

Plaintiffs cite in their pre-trial brief Sec. 324(a) of the Restatement of Torts, Second 1965, and case authority, in support of their contention that Avondale had a right to rely on Valls' description as contained in his January 26, 1972 certificate and that third parties harmed as a result of such reliance are entitled to recover against defendant. However, in view of our finding regarding the accuracy of the description, the existence of statutory authority and regulations promulgated thereunder placing the ultimate responsibility for the safety of employees upon Avondale and the fact that Marshall St. Amant could not testify that he did rely on the description as found in the January 26, 1972 certificate, we conclude that the authorities cited are not applicable to this case.

We are compelled to make reference to Paragraphs 16 and 17 of the plaintiffs' proposed findings of fact in order to represent the record correctly. By our Minute Entry dated July 13, 1976 (see Record Document No. 55), we ordered that "Written reports of experts who may or will be called as witnesses shall be obtained and exchanged by the parties not later than October 11, 1976." On trial the expert witnesses, Daughdrill and Uhlich, called by plaintiffs, did testify regarding matters contained in their reports (which plaintiffs in paragraph 17 of their proposed findings of fact state were all reports obtained by plaintiffs from Daughdrill and Uhlich prior to October 11, 1976 and that copies thereof were timely furnished to defendant). Upon plaintiffs' counsel's attempt to elicit testimony and the witnesses' attempt to discuss opinions and matters beyond the reports, defendant's counsel objected and we sustained the objection. We also sustained defendant's attorney's objection to acceptance of the witness Daughdrill as an expert in the field of causes of gas explosions.

Counsel for plaintiffs' representation that we did not permit the making of a proffer is not accurate. We allowed proffers to be made, but denied requests to proffer irrelevant evidence.

---

**13.** P–3 is the specification for the work to be done by Avondale. We admitted the exhibit subject to defendant's objection and now overrule same.

The plaintiffs having failed to meet their burden of proof, we granted the defendant's Rule 41(b) motion. Judgment shall now be entered accordingly.